# Cases

# THIRD DEPARTMENT

AT

# GENERAL TERM,

## November, 1875.

---

HARVEY R. MILLARD, Respondent, *v.* JOHN McMULLIN
AND OTHERS, Appellants.

*Contract for sale of land — when no estate passes to vendee — Merger — legal and equitable estates.*

An executory agreement to convey an estate in lands upon payments thereafter to be made, does not give to the vendee any estate in such lands.

When equitable and legal estates unite in the same person, the equitable is merged in the legal estate and ceases to be recognized in equity, but in order to merge, the equitable must be coextensive with the legal estate, and in such cases the merger is largely a question of intention.

APPEAL from a judgment rendered on the decision of the court at Special Term, establishing plaintiff's title to lands in controversy, and declaring the rights and equities of defendant Bell, by way of liens thereon, and directing a sale to satisfy said liens, with remainder to the plaintiff.

The court found, among other things, as follows:

That Morgan Lewis, being the owner of the farm of land described in the complaint, on the 1st day of February, 1830, did, by an instrument in writing under his hand and seal, duly grant, demise and to farm let the said premises to Angus McMullin, subject to and reserving an annual rent of thirty-six bushels of wheat, to be delivered at Esopus landing, on the Hudson river, on

the first day of February in each year (after the ten years of about half and three-fourths rent), also reserving the right to re-enter and take possession of the said premises, in case the said rent was not paid within thirty days after the time agreed upon. The said Angus entered upon and took possession of the said premises under the said instrument, and occupied the same as a farm, and paid rent from time to time in pursuance of the said instrument, and up to the year 1843, when he died, leaving John and · Daniel, his two sons, known as John and Daniel McMullin, to whom he devised the said premises, and they thereby became the owners thereof, subject to the said annual rent. They continued in possession as tenants in common of said premises, paying the rent from time to time until 1847. In April, 1847, the said Daniel McMullin, by parol, agreed to sell his interest in said premises to his brother John, for the sum of $600, and at that time delivered the possession of the entire premises to him. The said John McMullin executed and delivered to Daniel a promissory note for the said $600 and interest, on which note said John paid interest, and renewed the same three times, and the debt was so continued until the 19th day of February, 1872, at which time it was embraced in a mortgage on said premises, given by the said John to said Daniel, to the amount of $641.02

The said John took possession of the entire farm, and occupied and claimed to own the same adversely under said sale, and continued to do so until May 1, 1872. On the 1st of November, 1861, the rent in arrears on said farm, under the said lease, had been allowed, by the said John McMullin, to accumulate to the amount of $599.53. On that day, Robert J. Livingston had succeeded to the landlord's rights of the said Morgan Lewis, under the said lease to Angus McMullin, and owned the said landlord's interest; and on that day entered into a contract in writing with the said John McMullin, under their hands and seals, whereby the said Livingston agreed to sell to the said McMullin the said premises for the sum of $1,080, which the said John agreed to pay for the same, with interest from the 1st day of February, 1861, in six equal annual payments, on the first day of December in each year thereafter, the last being December 1, 1867.

It was provided, in the said agreement, that in case of failure on

the part of the said John to perform his part thereof, the said Livingston should have the right to re-enter on the said premises, and the said John should forfeit all legal and equitable claim on said Livingston, and should be deemed a tenant at sufferance of the said Livingston, and the said Livingston should have the right to take immediate possession of said premises.

It was further provided, that upon a fulfillment of the said agreement by the said John, the said Livingston should convey the said premises to the said John by a good and sufficient deed, with the usual covenants of warranty, except as against any person holding or claiming by virtue of any lease from Morgan Lewis or his representatives.

The said John paid on said contract seventy dollars on the 4th day of January, 1864, and fifty dollars on the 1st day of December, 1867.

On the 7th day of December, 1867, Harvey R. Millard and George M. Frisbee duly obtained a judgment against the said John McMullin for the sum of $276.90 damages and costs, which was on that day duly filed and docketed in the office of the clerk of Delaware county, wherein said premises were situated.

On the 28th of April, 1871, Calvin H. Bell duly obtained a judgment in the Supreme Court against the said John McMullin for the sum of $125.99 damages and costs, which was duly docketed in the office of the clerk of Delaware county.

On the 12th day of July, 1871, Harvey R. Millard duly obtained a judgment against the said John McMullin for the sum of $91.50 damages and costs, and a transcript thereof was on that day duly filed and judgment docketed in the office of the clerk of said county; that an execution was duly issued on the said judgment of Millard and Frisbee, and delivered to the sheriff of said county, by virtue of which he duly levied upon, advertised and sold the said premises on the 14th day of June, 1872, as the property of the said John McMullin, and the same were struck off to the said Millard for the sum of $412.77, he being the highest bidder; the same not having been redeemed, the sheriff on the 24th day of September, 1873, duly executed and delivered to said Millard a sheriff's deed of said premises, which was duly recorded in said county clerk's office on the 26th day of September, 1873, reserving sixteen acres

previously conveyed by the said John McMullin to James McCune, off from the easterly corner thereof.

On the 19th day of February, 1872, the said John McMullin and wife duly executed and delivered to Daniel McMullin a bond and mortgage on said premises to secure the sum of $1,125.43, payable in installments, with interest, reserving the sixteen acres conveyed to McCune.

Afterward, about the 1st of March, 1873, as a security for said bond and mortgage, the said Daniel, in good faith, and without any fraudulent intent, and without any new consideration, and to secure no other debt, procured an assignment, in writing, of the said Livingston contract from the said John to him. The said Daniel was advised to do so by the said Bell.

On the 11th day of March, 1872, the said Daniel assigned the said bond and mortgage, for a good consideration, to Henry Irwin, of Delhi, and on or about the 22d of April, 1872, he also assigned for the same consideration the said Livingston contract to the said Irwin.

The said John McMullin being indebted to the said Bell on the said judgment and other matters to the amount of $244, on the 22d day of March, 1872, assigned to said Bell said Livingston contract, as a security of the said indebtedness, subject to the interest in the same, which Daniel obtained by his assignment, and authorized the said Bell to perform the said contract in case it became necessary for him to do so, which Bell did in good faith and without any fraud whatever.

On the 23d day of April, 1872, the said Irwin, for a good consideration, and without any fraudulent intent, duly assigned said bond and mortgage and said contract to said Bell, and the said Bell, with full knowledge of the judgment of Millard and Frisbee, and of Millard against said John McMullin, received and accepted of the assignment, but in good faith and without any fraudulent intent.

On the 1st day of May, 1872, the said Bell formally turned the said John and his wife Juliette out of possession of said premises, and formally took possession thereof, and leased the said premises to the said Juliette for the term of one year from the 1st day of April, 1872, for the sum of $200 and she to pay the taxes. The

said Bell did not, on the place or elsewhere, demand the payment of the rent on said lease, and thereby attempt to terminate said lease; neither did he attempt to re-enter upon said premises by reason of the non-fulfillment of the covenants of said lease.

On the 6th day of May, 1872, the said Bell, as he was authorized by John to do, paid the said Livingston $1,716.94, the amount due and unpaid upon said contract for said premises, and took a deed of conveyance from said Livingston and wife of said premises, with covenants of warranty against all claims, except as against any person holding or claiming by virtue of any lease from Morgan Lewis or his representatives, as provided in said land contract, which was duly recorded in the office of the clerk of Delaware county, on the 14th day of May, 1872.

On the 15th day of May, 1873, the said Bell contracted in writing to sell and convey said premises to the said Juliette for the sum of $3,500, which she agreed to pay for the same in annual installments of $400 each, the last one being $600, with interest, excepting the sixteen acres conveyed to McCune, and on the payment of the same the said Bell agreed to give her a warranty deed of said premises.

On the 21st of October, 1873, the said John duly assigned to said Bell his equitable cause of action against said Daniel to compel him to convey by deed in writing his interest in said premises, in pursuance of said parol agreement to sell.

The said Juliette and John McMullin continue in possession of the premises and claim to own and hold the same under said contract from Bell.

Before the commencement of this action, about the 1st of October, 1873, the said plaintiff went upon the premises and demanded possession thereof under his deed from the sheriff, from the said John and Juliette, and they refused to give up said possession, but claimed to own and hold the same under said contract with Bell.

The said premises are now worth about the sum of $3,000. The annual use of them is worth about $200.

Among other conclusions of law, the court held that there was no merger of one title or interest into the other by virtue of the contract of November 1, 1861, for the reason that the contract did not have the effect of granting and conveying title either way. It was only an executory contract to convey on the payment of the con-

tract-price, with interest. It did not operate as a grant *in præsenti,* so as to create merger.

That by virtue of this contract McMullin did not release or extinguish his title or interest in said premises under the said lease *in præsenti.*

That on the 7th of December, 1867, when Harvey R. Millard and George M. Frisbee perfected their said judgment against John McMullin, he was the owner in fee of the said premises, subject to said landlord's rights and equities under said contract, and subject to the equities of said Daniel, and had such title in said premises that the said judgment became and was a lien thereon, subject to all the prior rights and equities that McMullin's title was subject to.

That McMullin never did convey the title that he held to said premises, as tenant, to Bell; and Bell having taken a deed from the landlord in pursuance of said contract, the landlord's interest and tenant's title is not merged. McMullin only assigned to Bell the landlord's interest that he purchased of Livingston and the right of action against Daniel.

That at the time of the sheriff's sale, on the 14th day of June, 1872, of these premises by virtue of the Millard and Frisbee execution, the judgment still continued a valid and subsisting lien on said premises, and that by virtue of such sale and of the deed which was subsequently received from the sheriff, the said Millard acquired and became the owner of the title of John McMullin as tenant under the said lease, subject to the equities prior thereto.

That on the 7th day of December, 1867, when Millard and Frisbee obtained their judgment against John McMullin, Daniel had an equitable lien on an undivided half of the tenant's title of the said premises for the unpaid part of the purchase-price thereof, and the said judgment was a lien on the tenant's interest in the said premises, subject to the equitable lien of Daniel.

That plaintiff was entitled to judgment, that he have and recover of the defendants the possession of the said premises, subject to said lien, with $225 as damages for the unlawful withholding from the time of the demand, with costs of this action.

The defendant Bell was entitled to judgment, that the amount of $2,595.40 be declared a lien on said premises prior to plaintiff's title, and that they be sold under a decree of this court, by the

sheriff of Delaware county, to satisfy the amount of said lien, with interest thereon, and his costs according to the practice of this court, and that out of the proceeds of such sale he first pay his fees and the costs of defendant Bell, to be taxed by the clerk of Delaware county, and then pay to the said Bell the amount of $2,595.40, with interest thereon, and the remainder to said plaintiff; and that the sheriff give a deed to the purchaser of said premises, and the purchaser have possession of said premises under said deed.

*C. H. Bell,* for the appellants.

*Wm. Gleason,* for the respondent.

BOARDMAN, J. :

By reference to the findings of fact in the court below, it appears that the judgment under which plaintiff claims title, was recovered and docketed in December, 1867. At that time defendant John McMullin, as one of two heirs of Angus McMullin, and as equitable assignee or purchaser from the other heir, was the owner of a durable lease of a farm in said county of Delaware, where said judgment was docketed. Prior to the last date, and in 1861, John McMullin made an executory contract with his landlord for the purchase of the landlord's remaining interest in the soil and rents reserved. This contract was never performed by McMullin, nor did he ever receive any deed under it. Defendant Bell became the assignee of such contract, in 1871, and, upon full payment and performance by him, obtained a deed of the landlord's interest.

It is claimed by the appellants, that the plaintiff's judgment never became a lien upon the land, for the reason that McMullin's durable lease and his title under the same became merged, in 1861, in the contract which he then made with his landlord for the purchase of his remaining interest in the property. In other words, the appellants claim that McMullin's freehold estate under his lease in fee, was merged in his executory contract to purchase his landlord's rents reserved and rights of forfeiture and re-entry for non-payment of rent. The statement of the proposition would seem to be a sufficient answer. A greater estate is not merged in a

smaller estate. (4 Kent Com., 99 ; *James* v. *Morey*, 2 Cow., 246.) The greater estate remains. If we concede that the contract gave McMullin an estate, it was not a greater estate than he before that possessed, and consequently could not drown it. But the contract did not give McMullin any estate. It was an executory agreement to convey upon payments to be made. McMullin, therefore, had but an equity. Where legal and equitable estates in land unite in the same person, the equitable is merged in the legal, and ceases to be recognized in equity. (*James* v. *Morey, supra ; Nicholson* v. *Halsey,* 1 Johns. Ch., 417.) But the equitable interest in this case was not coextensive with the legal estate, and would not therefore merge at all. In my opinion no merger could take place until an actual conveyance by the landlord of his remaining interest to the person owning the durable lease. That has never occurred.

Besides, merger is generally, if not always, a question of intention. The acts of McMullin do not indicate an intention that a merger should take place. He assigns the contract without assigning the lease. He mortgages his leasehold estate to secure the debt due to Daniel for the purchase-price of his half. This he could not do if the legal estate had been merged in the contract, because by the contract he had no estate to mortgage. It would be extravagant to suppose McMullin intended to extinguish his legal estate under his lease, and accept, instead, a mere executory contract for the purchase of the fee.

If these conclusions are well founded, the judgment under which plaintiff claims title became a lien upon McMullin's premises in 1867, and through such judgment and the sale thereunder the plaintiff became the owner of McMullin's title and interest, subject to the equities of Bell, as assignee of the contract and of the mortgage given to Daniel, and as owner of the landlord's interest. Such equitable interest of Bell is in the nature of a mortgage upon the estate, and was properly chargeable with the amounts realized by Bell from the estate while in his possession and leased by him. The sum of $322.50, realized by Bell from the property, was justly deducted from the amount found due Bell by the Special Term.

Daniel's title and interest are not in issue in this case. In allowing Bell the amount of Daniel's equitable lien, the court went to the extreme limit in Bell's favor. If Daniel still holds and owns

his title, then such allowance should not have been made to Bell. As the plaintiff has not objected to such allowance, I do not. think Bell can be permitted to object to the finding of the court whereby the allowance becomes possible.

The findings and decision of the court appear to me quite too favorable to defendant Bell; notably in omitting to deduct the $120, paid by McMullin upon the contract of 1861, by way of interest.

As no injustice has been done the appellants, and no error calling for a new trial, the judgment must be affirmed with costs.

LEARNED, P. J. (dissenting):

On November 1st, 1861, John McMullin, legally as to one half, equitably as to the other, was the owner of a perpetual lease of a farm from Morgan Lewis. Robert J. Livingston was the owner of the rents reserved. The rent was in arrear about $600.

Livingston and McMullin entered into a contract of sale that day. Livingston agreed to sell the farm to McMullin, for $1,080, in six equal annual payments, which McMullin agreed to pay. In case of failure to perform, Livingston was to have a right to re-enter, and McMullin was to *forfeit all legal and equitable* claim, and to be deemed a tenant at sufferance, and Livingston to have the right to immediate possession. On fulfillment of the contract, Livingston was to execute a deed with warranty, except as against persons holding a lease from Morgan Lewis.

The question is: What was McMullin's interest in the land, after the execution of that contract? He made two payments thereon before the recovery of the Millard and Frisbee judgment, which was in December, 1867.

There was no merger of the lease in the contract; for McMullin obtained no legal estate by the contract. There was not strictly a *surrender* of the lease to Livingston, for, in strict language, a surrender must be to a remainderman or reversioner. And Livingston had no reversion or remainder.

But, by making that contract, did not the parties practically release and annul the lease, and substitute therefor a different agreement? And is not McMullin estopped from asserting the existence of the lease, after the contract is in force? (*Springstein* v. *Schemerhorn*, 12 Johns., 357.)

After the contract was executed, Livingston could not have sued McMullin on any of the covenants in the old lease, for rent, etc. He could not have collected the rent in arrear, *as rent.*

The lease has a clause of re-entry and forfeiture, after non-payment of rent for thirty days. The new contract provides for re-entry and forfeiture, without any delay, on non-payment of installments. Clearly, then, the rent was at an end. If, then, McMullin's estate remained as it was before, free from rent, he needed no deed from Livingston.

It seems to me that, by this contract, the parties voluntarily changed their position, as they might then do, since no third party had any rights in the farm. Instead of landlord and tenant under a perpetual lease, they became vendor and purchaser, with possession in the purchaser. For the contract says, on non-payment of installments, McMullin shall lose all claim, legal and equitable; shall be a mere tenant at sufferance; and Livingston shall be entitled to immediate possession. How is it possible, after this, that McMullin could be a tenant in fee, subject only to the payment of rent. The parties might have contracted simply for the release, or quit-claim, of the rent. But that would have needed different language, and no agreement to warrant.

It may be said that Livingston had no estate to sell. But he had the right to enforce the forfeiture of the lease for non-payment of rent, long in arrear. And if the parties chose to act upon a practical or implied forfeiture, by entering into a contract for purchase, and by ceasing to stand as landlord and tenant, I think they could do so.

It seems to me, therefore, that after November 1, 1861, McMullin had no legal estate, and had only a contract. This is not subject to levy. (1 R. S., [m. p.] 744, § 4.)

Again. If, as the Special Term held, McMullin had an estate, and, by levy under the judgment of 1867, it was sold and a deed given to plaintiff, he ought to bring ejectment to recover the land. He is not in possession. He asks that he be declared owner of the premises, and sundry other matters, and that he have possession. The Special Term adjudged that he was owner, subject to the *landlord's* interest, which Bell now owns.

The court further adjudge that the property be sold to pay *Bell's*

*lien.* Bell never asked this, and now appeals from it. The plaintiff never asked it. And it is not a proper relief in an action of ejectment. If Bell stands as the assignee of the landlord's (so to call him) rights under the contract, he has not any lien for which the property can be sold. Livingston did not have a *lien,* after the contract was made, in whatever light the contract be looked upon.

If the payment by Bell to Livingston be looked upon as a *purchase* by Bell (as the Special Term seems to have held), then Bell stands in Livingston's place. His right to forfeit the land for non-payment of the installment, cannot be turned into a lien against his will.

If the payment by him be looked upon as a performance of the contract, then there is nothing for which a lien can exist.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

Judgment affirmed, with costs.